YORK RESEARCH CORPORATION,
Petitioner–Appellant, Cross–Appellee,

v.

Harris LANDGARTEN, Richard Clowes, Roland Joffe, Steven D. Joffe, Danny Rosenthal, Rebecka Grahn Russo, Ian Clowes, Stanley Ettinger, Elizabeth Evans, Geoffrey Kerr, Sandor C. Schweiger, Carl Landgarten, Barry Landgarten, Joan M. Pilatich, Ernest Schnell, Nathan B. Sloan, Oreste Vincent and Susan Solicito, Respondents,

Richard Clowes, Roland Joffe, Steven D. Joffe, Danny Rosenthal, Rebecka Grahn Russo, Ian Clowes, Geoffrey Kerr, Joan M. Pilatich, Ernest Schnell, Nathan B. Sloan, Oreste Vincent and Susan Solicito, Respondents–Appellees, Cross–Appellants,

Sandor C. Schweiger,
Respondent–Appellee.

Nos. 593, 594, Dockets 90–7602, 90–7604.

United States Court of Appeals,
Second Circuit.

Argued Dec. 3, 1990.

Decided March 8, 1991.

Robert P. Stein, New York City (Scheffler Karlinsky & Stein, New York City, of

counsel), for petitioner-appellant, cross-appellee.

Kevin P. Carroll, New York City (D'Amato & Lynch, New York City, of counsel), for respondent-appellee.

Charles J. Hecht, New York City (Jeffrey M. Haber, New York City, of counsel), for respondents-appellees, cross-appellants.

Before NEWMAN and WINTER, Circuit Judges, and DALY, District Judge.*

WINTER, Circuit Judge:

This case involves a judgment confirming an arbitration award against York Research Corporation ("York") and denying a motion by cross-appellants for attorneys' fees. York argues that the arbitration award is unenforceable because the American Arbitration Association ("AAA") improperly refused to replace two arbitrators to whom York had objected. Cross-appellants contend that the arbitration award should be construed to include certain attorneys' fees. We hold that York waived its right to object to the composition of the arbitration panel by proceeding with the arbitration without objection and therefore affirm that portion of the judgment. However, because the award is unclear on the subject of attorneys' fees, we remand the attorneys' fees question to the district court to conduct proceedings to clarify the views of the arbitration panel.

## BACKGROUND

In 1985, York and respondents, who were shareholders of Techland Systems, Inc. ("Techland Shareholders"), entered into a Stock Purchase Agreement that provided for an exchange of eighty percent of the Techland stock owned by the Techland Shareholders for shares of York common stock. The purchase agreement gave the Techland Shareholders a conditional right to "put" the remaining twenty percent of Techland stock to York in exchange for more York stock. The agreement also pro-

vided that York would use the first proceeds of any offering of securities to refinance Techland's debt to Barclays Bank so that personal guarantees of that debt made by Techland shareholders Harris Landgarten and Richard Clowes would be released. Finally, Paragraph 13E of the purchase agreement provided that any disputes arising under the agreement were to be settled by binding arbitration "pursuant to the Commercial Rules ... of the American Arbitration Association."

In April 1986, York filed a demand for arbitration with the AAA pursuant to Paragraph 13E. York alleged that the Techland Shareholders had misrepresented the financial health of Techland and the sales potential of its products. York sought rescission of the agreement and monetary damages. The Techland Shareholders counter-claimed that York had intentionally subverted Techland's business by failing to pay various obligations, syphoning off cash, and overvaluing inventory transfers and management fees. They also contended that York had refused to honor the provisions of the purchase agreement allowing the Techland Shareholders to "put" additional shares to York and requiring York to use the proceeds of any stock offering to refinance Techland's debt to Barclays Bank.

Pursuant to Rule 13 of its Commercial Arbitration Rules, the AAA transmitted to the parties a list of fourteen potential arbitrators. Counsel for the Techland Shareholders struck two names from the list. York's attorneys, Townley & Updike, struck ten of the fourteen names, including Rhenus Alderman and Harry I. Cobern. In a letter dated October 15, 1986, the AAA informed the parties that Alderman, Cobern, and Joanne Barak had been appointed as arbitrators for the proceeding. The letter erroneously stated that the arbitrators had been selected from the list returned by York. One week later, the AAA wrote to amend its earlier letter to say that the arbitrators had been selected from the list returned by counsel for the Techland

---

* The Honorable T.F. Gilroy Daly of the United States District Court for the District of Connecticut, sitting by designation.

Shareholders. Townley & Updike received both letters.

Neither York nor its attorneys objected to the appointment of Alderman and Cobern. However, an associate at Townley and Updike, Debra Silverman, did correspond with the AAA concerning the appointment of Barak, to whom York had not objected. After the AAA notified York that Barak had once appeared as opposing counsel to Townley & Updike, Silverman requested more information. Ultimately, she informed the AAA that York had no objections to Barak. Before the arbitration hearings began, the AAA sent three additional letters that included the names of the three arbitrators. Townley & Updike also received those letters but registered no objection to Alderman and Cobern.

On September 29, 1987, with Townley & Updike participating as counsel for York, a hearing was held before Alderman, Barak and Cobern. At this hearing, the arbitration panel ruled on various procedural matters and determined the scope of the claims to be heard. On September 30, the first evidentiary hearing was held. Counsel for the parties made their opening statements, and Landgarten testified.

On October 23, Townley & Updike contacted the AAA to request additional biographical information about the arbitrators. Thereafter, Townley & Updike informed the AAA that it had stricken Alderman and Cobern from the list of arbitrators. It demanded that a panel of three new arbitrators be appointed. In response, the Techland Shareholders argued that York had waived any objection to the composition of the panel. On October 26, the AAA notified Townley & Updike by telephone that the AAA had rejected York's request to reconstitute the arbitration panel. On October 27, at a meeting between counsel for the parties, Jeffrey Ingraham, an AAA Tribunal Administrator, and Rose P. Grieme, AAA Assistant Regional Director, Grieme reaffirmed the determination of the AAA that the arbitration panel would not be reconstituted and that the hearings would proceed.

On August 4, 1989, after another twenty days of hearings, the arbitrators issued their award. Barak, to whom no one had objected, and Cobern, to whom York had objected, voted to deny York's claims. They also ordered York to discharge Landgarten's and Clowes's personal guarantees to Barclays Bank, to issue and register York shares to the Techland Shareholders who had exercised the put option, and to register all York shares given to the Techland Shareholders at the closing. In a partial dissent, Alderman, to whom York had objected, indicated that he would have ordered Landgarten and Clowes to return their York shares to York.

On August 17, York, represented by new attorneys, filed a petition to vacate the award under 9 U.S.C. § 10 (1988). The Techland Shareholders filed a cross-motion for summary judgment to confirm the award and for sanctions and attorneys' fees. The district court concluded, *inter alia*, that York had waived its right to object to the appointment of Alderman and Cobern and that the arbitration award did not grant attorneys' fees to the Techland Shareholders. The court denied the motion for sanctions on the ground that York's claim concerning the composition of the arbitration panel was "colorable."

On appeal, York challenges the district court's determination that York waived its objection to the appointment of the arbitrators. The Techland Shareholders cross-appeal and urge that the arbitration award should be read to require York to pay attorneys' fees incurred because of York's failure to satisfy and discharge Landgarten's and Clowes's personal guarantees to Barclays Bank. They also contend that the district court erred in refusing to impose sanctions under Fed.R.Civ.P. 11.

## DISCUSSION

### A. *Waiver*

The agreement between York and the various respondents provides that any dispute arising under the agreement "shall be determined and settled by binding arbitration in New York, New York, pursuant to the Commercial Rules then existing of the

American Arbitration Association." Commercial Rule 38 provides:

> Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state objection thereto in writing, shall be deemed to have waived the right to object.

Under the terms of this provision, York has waived its objection to the appointment of Alderman and Cobern. Townley & Updike knew the material facts well before the arbitration hearings began. After receiving notice of the appointment of the panel, Silverman, the Townley & Updike associate, corresponded with the AAA concerning the appointment of Barak without registering any objection to Alderman and Cobern. Subsequently, two other Townley & Updike attorneys participated in two days of hearings before the panel. It was not until twenty-three days after these hearings that Townley & Updike first objected to the panel.

■ York maintains that its failure to object prior to the commencement of the arbitration proceedings was the result of the mistake or inadvertence of Townley & Updike rather than an intentional waiver of a known right. York argues that it first learned of the problem on October 23, 1987, at which time it promptly objected to the appointments. Putting aside the fact that the record contains only conclusory speculations about Silverman's conduct and state of mind, the notice to Townley & Updike of the appointment of the arbitration panel was notice to York, and Townley & Updike's failure to object is similarly attributable to York. As the Supreme Court has observed, a litigant "is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash,* 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962) (quoting *Smith v. Ayer,* 101 U.S. 320, 326, 25 L.Ed. 955 (1879)). Townley & Updike was thus York's agent for purposes of receiving papers relevant to the arbitration as well as making, or declining to make, objections on York's behalf. To hold otherwise would invite chaos.

■ York argues further that its objection was timely because it was made before the arbitration panel issued its award. However, the most natural meaning of the word "proceeds" in Commercial Rule 38 encompasses participation in the formal arbitration proceeding at any stage. We thus hold that Rule 38 requires that an objection based on facts known before the beginning of the arbitration proceeding may not be raised after the proceeding begins. York clearly participated in that proceeding knowing the facts on which its belated objection was based.

The decisions on which York relies are wholly inapposite. For example, in *Cook Industries, Inc. v. C. Itoh & Co.,* 449 F.2d 106 (2d Cir.1971), we affirmed the denial of a motion to vacate an arbitration award. We held that the appellant was "fully aware" of the facts supporting its allegation of arbitrator partiality at the time the dispute was submitted to arbitration. We observed that a party "cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first." *Id.* at 107–08. York argues that because it raised an objection "during the course of the arbitration proceeding," *Cook Industries* supports its position. Although York's objection during the arbitration proceedings distinguishes the instant case from *Cook Industries, Cook Industries* did not hold that a party aware of the grounds for an objection may nevertheless delay that objection so long as the award has not been made. York's reliance on *Rose v. Travelers Insurance Co.,* 118 A.D.2d 844, 500 N.Y.S.2d 330 (2d Dept.1986), is similarly misplaced. Interpreting an AAA waiver rule identical to Commercial Rule 38, the court held that a party's participation in two arbitration proceedings waived the right to object to the composition of the panel. Again, however, *Rose* did not hold that an objection made at any time before the award is timely.

Finally, weight must be given to the fact that the AAA interpreted its Commercial Rules to permit the arbitration panel to hear the case. The parties agreed that the AAA should administer the arbitration process and apply its Commercial Arbitration Rules. Given the parties' designation of the AAA as the supervisory authority regarding the resolution of disputes under the agreement, the AAA's view of the meaning of its rules is of considerable significance.

## B. *Attorneys' Fees*

■ Cross-appellants argue that Paragraph 2(A) of the arbitration award supports a claim for attorneys' fees. Paragraph 2(A) provides that

[w]ithin thirty (30) days from the date of transmittal of this Award to the Parties, CLAIMANT shall satisfy and discharge the personal guarantees given by HARRIS LANDGARTEN and RICHARD CLOWES to Barclay's Bank and CLAIMANT shall indemnify HARRIS LANDGARTEN and RICHARD CLOWES for any and all damages and expenses incurred as a consequence of CLAIMANT'S failure to satisfy and discharge said guarantees.

This language is quite broad and entitles Landgarten and Clowes to "any and all ... expenses" incurred as a result of York's breach of its contractual obligation to discharge the personal guarantees. The arbitration, the action to confirm the award, the subsequent appeal, and the defense of a foreclosure proceeding against Landgarten and Clowes all occurred in part because of York's "failure to satisfy and discharge" the guarantees. Legal fees expended in those diverse proceedings were arguably "expenses" in the ordinary sense of that term. One plausible but not inevitable interpretation of the award thus supports the claim for attorneys' fees.

However, there is a general presumption against fee-shifting in American courts. In *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court reiterated the American Rule under which all parties

to litigation are presumed to bear their own attorneys' fees. This presumption militates against a broad reading of "expenses." The Supreme Court recognized, however, that there are statutory exceptions to this general rule and that private parties are free to agree to fee-shifting arrangements. *Id.* at 257, 95 S.Ct. at 1621.

The instant appeal involves a slightly different situation. The arbitrators did not find that the Stock Purchase Agreement contained an indemnity agreement. Instead, they imposed the indemnity obligation as part of the remedy for York's breach of its contractual obligation to discharge the personal guarantees. The question presented thus is whether the remedy ordered included attorneys' fees and, if it did, whether the arbitrators had authority to award fees.

We are unable to determine whether the arbitrators intended the word "expenses" to include attorneys' fees. For this reason, we remand that portion of the case to the district court with instructions to seek clarification from the arbitrators. *See, e.g., New York Bus Tours, Inc. v. Kheel*, 864 F.2d 9, 12 (2d Cir.1988) (instructing district court to remand to arbitrator to clarify whether arbitration award provides certain relief); *Americas Insurance Co. v. Seagull Compania Naviera, S.A.*, 774 F.2d 64 (2d Cir.1985) (instructing district court to refer matter back to arbitration panel to clarify whether panel intended two separate awards to be set off against each other).

## C. *Sanctions*

■ The district court denied cross-appellants' application for sanctions on the ground that one of York's claims was "colorable." We review the district court's refusal to award sanctions for abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.*, —— U.S. ——, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990). The district court applied the proper legal standard for determining whether sanctions were warranted. *See Mercado v. United States Customs Service*, 873 F.2d 641 (2d Cir. 1989). We conclude that the court did not

abuse its discretion in denying the motion for sanctions.

Affirmed in part and remanded in part with instructions.