360 F.3d 322
 SECURITY INSURANCE COMPANY OF HARTFORD, Plaintiff-Appellee,
Trustmark Insurance Company, Defendant-Third-Party-Plaintiff-Appellee,
v.
TIG INSURANCE COMPANY, Third-Party-Defendant-Appellant.
 Docket No. 03-7773.
 United States Court of Appeals, Second Circuit.
 Argued: November 21, 2003.
 Decided: March 2, 2004.
 
 Harry P. Cohen, Cadwalader, Wickersham & Taft LLP, New York, New York (Michael G. Dolan, Lawrence I. Brandes, on the brief) for Third-Party-Defendant-Appellant.
 David J. Grais, Dewey Ballantine LLP, New York, New York (Robert J. Morrow, on the brief, Kathryn C. Ellsworth, Erick M. Sandler, Shannon Elise McClure, of counsel, Frank F. Coulom, Jr., Marion B. Manzo, Robinson & Cole, LLP, Hartford, Connecticut, Mark B. Holton, Kathryn E. Nealon, Gibson Dunn & Crutcher LLP, New York, New York, on the brief), for Plaintiff-Appellee.
 Before: OAKES, POOLER, and WESLEY, Circuit Judges.
 WESLEY, Circuit Judge.
 
 
 1
 This case presents a recurring and troubling theme in many commercial contracts: to what extent must a court — confronted with a choice-of-law provision in a contract — incorporate the designated state's statutory and common law governing arbitrations even when doing so seems contrary to the Federal Arbitration Act ("FAA")?
 
 I. Background
 
 2
 TIG Insurance Company ("TIG") and Security Insurance Company of Hartford ("Security") entered into a contract ("Reinsurance Agreement") whereby Security agreed to reinsure a portion of TIG's liability for certain workers' compensation claims. The agreement was negotiated by Security's agent WEB Management LLC ("WEB"). The Reinsurance Agreement contains an arbitration clause in Article 27 submitting "any irreconcilable dispute between parties" to arbitration[1] and a choice-of-law clause in Article 28 that designates California's law as controlling.[2]
 
 
 3
 At the time it entered into the Reinsurance Agreement with TIG, Security also entered into another contract ("Retrocession Agreement") with Trustmark Insurance Company ("Trustmark") whereby Trustmark agreed to reinsure Security for 100% of the risk that Security had assumed from TIG under the Reinsurance Agreement. WEB acted as agent for both Security and Trustmark with regard to the Retrocession Agreement. That agreement does not contain an arbitration clause.
 
 
 4
 Several years thereafter, Trustmark informed Security that TIG had defrauded WEB in connection with the Reinsurance Agreement and suggested Security rescind that agreement. Security requested Trustmark provide proof of the alleged fraud. Instead of providing the requested proof, Trustmark notified Security it was rescinding their agreement. Security filed a complaint against Trustmark in federal court seeking declarations that Trustmark was not entitled to rescind the Retrocession Agreement, that the agreement remained valid and binding, and that Trustmark was required to pay Security for all losses covered by the agreement.[3] Trustmark then filed a third-party complaint against TIG alleging TIG had fraudulently induced the Retrocession Agreement in an "attempt to transfer to its unsuspecting reinsurers[, Security and Trustmark,] tens of millions of dollars in losses stemming from its under-performing workers' compensation business."
 
 
 5
 A month prior to Trustmark's third-party complaint, Security suspended further claim payments to TIG based on Trustmark's allegations of fraud. In response, TIG invoked the arbitration clause in the TIG/Security Reinsurance Agreement. Security invited Trustmark to undertake the defense of TIG's claims against Security and further proposed resolving all of the issues pending in the lawsuit through arbitration. Security and Trustmark were unable to agree and the arbitration proceeded. As of this appeal, Security and TIG had selected the arbitrators and umpires, submitted positional statements to the arbitration panel, held an organizational hearing, and submitted proposed briefing and hearing schedules. Prior to the hearing, which was set to begin on August 11, 2003, however, Security moved before the arbitration panel to stay the arbitration pending the trial in the district court.
 
 
 6
 Thereafter, Security moved in district court to stay the arbitration pending completion of the court action. Security asserted that the choice-of-law provision in the Reinsurance Agreement reflects the intentions of TIG and Security to apply California's arbitration rules. Those rules include California Civil Procedure Code § 1281.2(c)(4), which permits a court to stay a pending arbitration where one of the parties is also a party to a pending court action arising out of the same transaction and there is a possibility of conflicting rulings.
 
 
 7
 The district court granted Security's motion relying primarily on Volt Information Sciences, Inc. v. Board of Trustees, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). See Sec. Ins. Co. of Hartford v. Trustmark Ins. Co., 283 F.Supp.2d 602 (D.Conn.2003). The district court rejected TIG's argument that Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), required a different result. See Sec. Ins. Co., 283 F.Supp.2d at 606-07. The court utilized California state law to determine whether the choice-of-law provision evidenced the parties' intent to incorporate California's arbitration rules. See id. at 608-10. Relying on a recent California Court of Appeals decision, the district court concluded that section 1281.2(c)(4) was applicable and stayed the pending arbitration between TIG and Security until the proceedings in the district court were completed. The district court also concluded that its ruling was not inconsistent with Second Circuit cases TIG had raised in opposition to the stay, noting those cases involved New York law. See id. at 610-11. The district court also held that Security's conduct in preparation for arbitration did not waive its right to seek the stay. See id. at 611.
 
 
 8
 TIG appeals and we now affirm the district court's order.
 
 II. Discussion
 
 9
 Section 2 of the FAA ensures that courts enforce arbitration clauses incorporated in contracts involving interstate commerce, thereby "creat[ing] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); see also 9 U.S.C. § 2. The FAA requires that "questions of arbitrability... be addressed with a healthy regard for the federal policy favoring arbitration," and that "any doubts concerning the scope of arbitrable issues ... be resolved in favor of arbitration." Moses H. Cone, 460 U.S. at 24-25, 103 S.Ct. 927. The federal policy favoring arbitration, however, does not change the long established principle that "[a]rbitration `is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir.1996) (quoting AT & T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). Rather, the FAA requires "arbitration proceed in the manner provided for in [the parties'] agreement." Volt, 489 U.S. at 475, 109 S.Ct. 1248 (quoting 9 U.S.C. § 4) (emphasis in original). In Volt, the Court made clear that "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." Id. at 476, 109 S.Ct. 1248.
 
 
 10
 Security agrees that the Reinsurance Agreement falls within the scope of the FAA, but argues that by including the California choice-of-law provision, the parties' evidenced their intent to employ California arbitration rules. Section 1281.2(c) provides that if a "court determines that a party to [an] arbitration is also a party to litigation in a pending court action or special proceeding with a third party [arising out of the same transaction and there is a possibility of conflicting rulings on a common issue of law or fact], the court ... (4) may stay arbitration pending the outcome of the court action or special proceeding." Cal.Civ.Proc.Code § 1281.2(c). Security contends that this section does not manifest a preference for lawsuits over arbitration, but is merely a procedural mechanism that dictates the order in which the two proceedings are to occur. It relies heavily on Volt and rightly so.
 
 
 11
 In Volt, the Supreme Court held that this specific provision is not preempted by the FAA "in a case where the parties have agreed that their arbitration agreement will be governed by the law of California." Volt, 489 U.S. at 470, 109 S.Ct. 1248. Volt Information Sciences, Inc. ("Volt") and Leland Stanford Junior University ("Stanford") had entered into a contract providing that all disputes would "be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then prevailing unless the parties mutually agreed ... otherwise." Id. at 470 n. 1, 109 S.Ct. 1248. The agreement also provided that it would "be governed by the law of the place where the Project was located," which under the facts of Volt was California. Id. at 470, 109 S.Ct. 1248. When Stanford filed suit in federal court against Volt and several third parties, Volt moved to compel arbitration, leading Stanford to move to stay arbitration under section 1281.2(c)(4). Id. at 470-71, 109 S.Ct. 1248. The California Court of Appeals affirmed the lower court's grant of the stay, recognizing that the contract was subject to the FAA but holding that, by specifying the contract would be governed by California law, the parties had incorporated California's arbitration rules into their agreement. Thus, the parties contractually had agreed that arbitration would be governed by section 1281.2(c)(4) allowing a court to stay the arbitration. The Supreme Court upheld the stay and the court's construction of the choice-of-law provision noting that federal policy favoring arbitration did not require a certain set of procedural rules, "even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward." Id. at 479, 109 S.Ct. 1248.
 
 
 12
 In Volt, the parties were permitted to structure their arbitration procedures as they saw fit, including incorporating California law. Furthermore, the Supreme Court refused to review the California court's construction of the contract noting that "the interpretation of private contracts is ordinarily a question of state law." Id. at 474, 109 S.Ct. 1248; see also PaineWebber, 81 F.3d at 1198 ("[I]n interpreting an arbitration agreement we apply the principles of state law that govern the formation of ordinary contracts."). Volt controls the present case. It compellingly tells us that section 1281.2(c)(4) is a procedural rule for arbitration and therefore is not preempted by the FAA. The only remaining question is whether the choice-of-law provision reveals the intention of TIG and Security to incorporate California's procedural arbitration rules — including section 1281.2(c)(4) — into the contract. The district court, following Volt's instruction, looked to California law.
 
 
 13
 TIG argues that Mastrobuono, as well as Second Circuit precedent, has altered Volt's directive with regard to analyzing choice-of-law clauses in contracts. TIG contends that those cases now require that as a matter of federal law, general choice-of-law clauses do not incorporate state rules that govern the allocation of authority between courts and arbitrators. While TIG may have correctly characterized Mastrobuono, the procedural provision in question here does not limit an arbitrator's authority. In Mastrobuono, the parties incorporated an arbitration clause in their contract requiring the arbitration proceedings be conducted in accordance with the rules of the National Association of Securities Dealers. Those rules allow arbitrators to award punitive damages. However, the contract also contained a choice-of-law provision stating the agreement would be "governed by the laws of the state of New York." Mastrobuono, 514 U.S. at 59 n. 2, 115 S.Ct. 1212. In New York, the Garrity rule provides that the power to award punitive damages is limited to judicial tribunals and is not within an arbitrator's authority. Id. at 55, 115 S.Ct. 1212 (citing Garrity v. Lyle Stuart, Inc., 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976)). Following arbitration and an award of punitive damages, respondents in Mastrobuono moved to vacate the award.
 
 
 14
 The Court recognized that "the choice-of-law clause introduces an ambiguity into an arbitration agreement that would otherwise allow punitive damages awards." Id. at 62, 115 S.Ct. 1212. In an attempt to give effect to all of the provisions of the contract, the Supreme Court held that "the best way to harmonize the choice-of-law provision with the arbitration provision is to read `the laws of the State of New York' to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators." Id. at 63-64, 115 S.Ct. 1212 (emphasis added). Following Mastrobuono, our circuit has held that a general "choice of law provision will not be construed to impose substantive restrictions on the parties' rights under the Federal Arbitration Act." PaineWebber, 81 F.3d at 1202. Similarly, this Court has rejected the argument that a general choice-of-law provision without more evidences the parties' intent "to incorporate New York decisional law on the allocation of powers between the court and the arbitrator." Nat'l Union Fire Co. v. Belco Petroleum Corp., 88 F.3d 129, 134 (2d Cir.1996); see also Shaw Group, Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 123 (2d Cir.2003).
 
 
 15
 The Second Circuit cases dealt with New York not California law. But more importantly, these cases involved "substantive restrictions on the parties' rights under the Federal Arbitration Act," PaineWebber, 81 F.3d at 1202, or "special rules limiting the authority of arbitrators." Mastrobuono, 514 U.S. at 64, 115 S.Ct. 1212. In cases where an ambiguity is introduced by the choice-of-law provision, federal policy favoring arbitration requires a specific reference to the restrictions on the parties' substantive rights or the arbitrator's powers to establish that the parties clearly intended to limit their rights under the FAA. The present case does not involve those types of restrictions. Section 1281.2(c)(4) gives the court the power to stay an arbitration; it does not limit the rights of the parties to arbitrate particular issues or the arbitrator's power to resolve the dispute. As Volt makes clear, section 1281.2(c)(4) is a "state procedural rule[]" that "determine[s] only the efficient order of proceedings" and does "not affect the enforceability of the arbitration agreement itself." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 688, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (citing Volt, 489 U.S. at 478-79, 109 S.Ct. 1248). As the district court correctly held, Volt tells us that the FAA does not preempt section 1281.2(c)(4) and therefore, we return to the question previously raised — how does California law interpret the choice-of-law provision utilized in this contract.
 
 
 16
 The district court looked to the California state court decision in Volt as well as a more recent case, Mount Diablo Medical Center v. Health Net of California, Inc., 101 Cal.App.4th 711, 124 Cal. Rptr.2d 607 (Cal.Ct.App.2002), to chart a course in this regard.[4] As noted above, in Volt, the California Court of Appeals interpreted a similar choice of law provision as evidencing an intent to include section 1281.2(c)(4). Unfortunately, we cannot rely on the Court of Appeals' decision in Volt; the California Supreme Court denied discretionary review in that case and ordered that the opinion not be published. Thus, under California law, that decision cannot be considered authoritative. See California Rule of Court 977.
 
 
 17
 In Mount Diablo, the contract in question included a broad choice-of-law clause that read: "The validity, construction, interpretation and enforcement of this Agreement shall be governed by the laws of the state of California." Mount Diablo, 101 Cal.App.4th at 716, 124 Cal.Rptr.2d 607. In determining the parties' intentions, the court observed that although the choice-of-law clause was "generic" because it did not mention arbitration, it was still "broad, unqualified and all-encompassing." Id. at 722, 124 Cal.Rptr.2d 607. Thus, the choice-of-law provision was construed to incorporate California's procedural rules regarding arbitration including section 1281.2(c)(4).
 
 
 18
 The choice-of-law provision in the present case is similarly broad and all encompassing. We agree with the district court that the California Supreme Court would conclude it evidences the parties' intent to incorporate section 1281.2(c)(4). California abides by the general proposition that sophisticated commercial parties intend a generic choice-of-law clause to control the entire agreement. See Nedlloyd Lines B.V. v. Superior Court, 3 Cal.4th 459, 468-69, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992). Nedlloyd involved language identical to the clause in the Reinsurance Agreement, except for the forum selected — Hong Kong. Id. at 463, 11 Cal.Rptr.2d 330, 834 P.2d 1148. In that case, the California Supreme Court reasoned that "[t]he phrase `governed by' is a broad one signifying a relationship of absolute direction, control, and restraint." Id. at 469, 11 Cal.Rptr.2d 330, 834 P.2d 1148. In addition, the choice-of-law provision in the present case includes an exception for "rules regarding credit for reinsurance in which case the rules of all applicable states shall pertain thereto." If the parties intended for only California substantive law to govern, they could easily have made their intentions clearer with a second exclusion for California's arbitration rules.
 
 
 19
 Finally, as the Mount Diablo court observed, "where the state arbitration provision is not inconsistent with the FAA policy of enforcing arbitration procedures chosen by the parties, choice-of-law clauses making no explicit reference to arbitration commonly have been interpreted to incorporate the state's law governing the enforcement of arbitration agreements." Mount Diablo, 101 Cal.App.4th at 725, 124 Cal.Rptr.2d 607.[5] The Supreme Court has examined the procedural rule in question here and found it consistent with the FAA's broad policy goals. See Volt, 489 U.S. at 479, 109 S.Ct. 1248. We believe the district court was correct in determining that the California Supreme Court would rule that the choice-of-law provision did incorporate the state's procedural rules for arbitration. Thus, we affirm its holding.
 
 
 20
 We also find TIG's waiver argument without merit. TIG claims Security's participation in the preliminary arbitration proceedings resulted in a waiver of its right to seek a stay of the arbitration pending the outcome of the related litigation. To support its argument, however, TIG cites only cases that stand for the principle that a party that engages in an arbitration hearing cannot then contest the right to arbitrate. See, e.g., Opals on Ice Lingerie v. Body Lines Inc., 320 F.3d 362, 368 (2d Cir.2003); ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc., 102 F.3d 677, 685 (2d Cir.1996). In this case, the arbitration hearing has not commenced. Furthermore, Security notified TIG and the arbitration panel early in the proceedings of the possibility that it would move to stay the arbitration while the litigation was pending. Thus, we affirm the district court's holding.
 
 III. Conclusion
 
 21
 The district court's order of August 5, 2003, granting appellee's motion to stay the pending arbitration is hereby AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 In full, the arbitration clause reads: "As a condition precedent to any right of action hereunder, any irreconcilable dispute between parties to this Agreement shall be submitted for decision to a board of arbitration composed of two arbitrators and an umpire meeting a place [sic] to be agreed by the board."
 
 
 [2]
 In full, the governing clause states: "This Agreement shall be governed by and construed according to the laws of the state of California, except as to rules regarding credit for reinsurance in which case the rules of all applicable states shall pertain thereto. Notwithstanding the foregoing, in the event of a conflict between any provision of this Agreement and the laws of the domiciliary state of any company intended to be reinsured hereunder, that domiciliary state's laws shall prevail."
 
 
 [3]
 Security also included claims under the Connecticut Unfair Insurance Practices Act, the Connecticut Unfair Trade Practices Act, and the common law for bad faith
 
 
 [4]
 TIG correctly argues that, except in rare circumstances, we defer to the Ninth Circuit's "prediction of the course of [California] law on a question of first impression within [California]."Factors Etc., Inc. v. Pro Arts, Inc., 652 F.2d 278, 283 (2d Cir.1981). TIG contends that the Ninth Circuit has indicated that California law would require that a choice-of-law clause would have to incorporate specifically California's procedural arbitration rules. See Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205 (9th Cir.1998). TIG's reliance on Wolsey is misplaced, however, because in that case the Ninth Circuit relied on its interpretation of Mastrobuono to conclude that the choice-of-law provision did not incorporate section 1281.2(c)(4). See id., 144 F.3d at 1212. The Ninth Circuit did not predict how the California Supreme Court would rule on the question of state law.
 
 
 [5]
 We do not accept TIG's argument thatMount Diablo is distinguishable because the choice-of-law clause included the phrase "enforcement." The court reasoned that the inclusion of this phrase helped the court discern the parties' intent to include section 1281.2(c)(4), but contrary to TIG's argument, this was not the sole ground for the court's finding. Mount Diablo, 101 Cal.App.4th at 722-25, 124 Cal.Rptr.2d 607.