In the

# United States Court of Appeals
## For the Seventh Circuit

No. 03-1223

LAWRENCE W. OLSON, Individually and
as Trustee of the Lawrence W. Olson
Charitable Remainder Trust Dated 11/01/92,

*Plaintiff-Appellant,*

*v.*

WEXFORD CLEARING SERVICES CORP.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 7644—**Suzanne B. Conlon**, *Judge.*

ARGUED APRIL 12, 2004—DECIDED FEBRUARY 3, 2005

Before WOOD, EVANS, and WILLIAMS, *Circuit Judges.*

WOOD, *Circuit Judge.* Suspecting that something was
fishy with his brokerage accounts, Lawrence Olson initiated
arbitration proceedings before the National Association of
Securities Dealers (NASD) against a number of entities,
including Wexford Clearing Services Corporation, the firm
responsible for clearing the trades placed by Olson's
brokerage firm. Approximately four months after the
arbitration panel dismissed Wexford from the proceedings,
Olson filed a petition in federal court seeking to vacate the

dismissal. The district court found that Olson was too late, given the three-month limitations period found in the Federal Arbitration Act (FAA), and dismissed his petition as untimely. We affirm.

**I**

In July 1997, Olson transferred certain financial accounts to the brokerage firm of R.D. Kushnir & Co. Kushnir in turn had a clearinghouse agreement with Wexford, under which Wexford performed the ministerial tasks of processing, clearing, and reporting trades placed by Kushnir. Suspecting fraud or other unauthorized activity in his accounts, Olson filed a demand for arbitration before the NASD on July 29, 1998, naming Kushnir and Wexford, among others, in his Statement of Claim. On February 11, 1999, Wexford moved to dismiss Olson's claim against it on the ground that it was not involved in any of the alleged wrongdoing. More than a year later, the NASD informed the parties that a three-member panel had been appointed to hear the arbitration. Olson promptly petitioned the panel for permission to submit an Amended Statement of Claim. It granted his request, and on July 14, 2000, Olson filed the amended statement. Before that occurred, however, Kushnir was placed in receivership, which had the effect of terminating the arbitration with respect to it. On July 24, 2000, Wexford renewed its motion to dismiss the Amended Statement of Claim. Seven months later, on February 18, 2001, the chair of the arbitration panel granted that motion in a two-page decision announcing that Olson's claim against Wexford was dismissed in its entirety.

Unhappy with this result, Olson asked the panel to reconsider its decision. His reason was largely technical: the panel's disposition was rendered by the chair alone, and not the full three-member panel required by the NASD rules. Wexford did not oppose Olson's request, and the panel

decided to rehear arguments on Wexford's motion to dismiss on April 15, 2002, a key date in our resolution of this appeal. On that day, the panel heard oral arguments on Wexford's motion and considered matters concerning the other parties to the arbitration. At the conclusion of Olson's and Wexford's arguments, the panel again found in favor of Wexford and issued a "Prehearing Conference Order" stating that Wexford "is hereby dismissed from this arbitration." This order was signed by the chair on behalf of the panel. A little over two months passed before Olson filed a "Motion for Consent to File Second Amended Statement of Claim," which Wexford opposed. On July 29, 2002, the arbitration panel issued a letter to Olson, stating that after "careful review," it was denying his request to amend his Statement of Claim for the second time.

Olson then turned to the federal court. On October 24, 2002, Olson filed this action to vacate the arbitral decision dismissing Wexford from the case. The district court properly invoked its diversity jurisdiction to consider the motion because Olson is a citizen of Illinois and Wexford is incorporated in Delaware with its principal place of business in New York. The amount in controversy exceeded $75,000. Olson urged the district court to grant him relief under the FAA, 9 U.S.C. § 10, on the theory that the arbitrators "were guilty of misconduct in refusing . . . to hear evidence pertinent and material to the controversy." *Id.* at § 10(a)(3). Olson was aware that the FAA has a three-month limitations period within which challenges to arbitration awards must be filed. See 9 U.S.C. § 12. In his view, however, the clock began to tick on July 29, 2002, the date on which the panel denied his request to file a second amended Statement of Claim. If so, of course, his October 24 suit was timely.

Wexford countered that the relevant date for purposes of the limitations analysis was April 15, 2002, when the panel dismissed it as a party to the arbitration proceedings.

Under Wexford's theory, Olson was too late because more than three months had passed since the panel made its final decision on April 15. Wexford moved for judgment on the pleadings and, in the alternative, for dismissal for failure to state a claim. The district court agreed with Wexford's analysis and dismissed Olson's petition as untimely.

## II

In considering a motion for judgment on the pleadings under Rule 12(c) or a motion to dismiss for failure to state a claim under Rule 12(b)(6), we apply the same *de novo* standard of review. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 n.6 (7th Cir. 2000). The FAA provides, in relevant part, that a party to an arbitration may ask the federal district court to vacate an award:

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(3) and (a)(4). As we stated above, Olson relied on § 10(a)(3) in the district court, contending that the arbitrators failed to consider relevant evidence.

Any motion to vacate an award under § 10 of the FAA must be served "within three months after the award is filed or delivered." 9 U.S.C. § 12. See *Lander Co., Inc. v. MMP Invs., Inc.*, 107 F.3d 476, 478 (7th Cir. 1997); *Int'l Union of Operating Eng'rs, Local No. 841 v. Murphy*, 82

F.3d 185, 188 (7th Cir. 1996); *Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Co., Inc.*, 628 F.2d 1023, 1026 (7th Cir. 1980). The plain language of § 12 does not provide for any exceptions to the three-month window and says nothing about tolling. See *Fradella v. Petricca*, 183 F.3d 17, 20 & n.4 (1st Cir. 1999) (applications to modify or clarify arbitral awards do not toll the limitations period under FAA § 12 ). It is undisputed that Olson did not serve notice of his motion to vacate on Wexford within three months of the panel's order of April 15, 2002 dismissing Wexford.

The question, however, is whether the statute began running on April 15, or whether it was triggered only when the panel denied Olson's request to file a second amended complaint on July 29. Our starting point in answering this question is NASD Rule 10330, which requires that an arbitration award include "a summary of the issues, . . . the damages and other relief requested, the damages and other relief awarded, [and] a statement of any other issues resolved. . . ." Rule 10330(e). The award is to be in writing and "signed by a majority of the arbitrators or in such manner as is required by applicable law." Rule 10330(a). Such awards may be entered as a judgment in any court of competent jurisdiction. *Id.* All awards issued by arbitrators "shall be deemed final and not subject to review or appeal." Rule 10330(b).

Olson argues that the April 15 dismissal of Wexford did not meet the NASD criteria for finality, because the following sentence appeared at the bottom of the Prehearing Conference Order: "This Order shall remain in effect unless amended by the Panel." This language, he asserts, supports the inference that the arbitrators did not consider the dismissal of Wexford to be their final award. The sentence on which Olson is relying, however, must be viewed in context. It is preceded by a section entitled "other rulings," which was addressed to the other parties remaining in the

arbitration. NASD Rule 10330(e) explicitly permits an award to include "a statement of any other issues resolved." Taken as a whole, we read the sentence to which Olson draws our attention as one addressed to the parts of the case that were still alive. It is not clear whether the presence of claims against other parties to the arbitration affects the finality of Wexford's dismissal, see *IDS Life Ins. Co. v. Royal Alliance Assoc., Inc.*, 266 F.3d 645, 650 (7th Cir. 2001), but Olson has not relied on that theory to reject the April 15 date (not surprisingly, because it would also doom his attempt to characterize the July 29 order as "final"). Under the circumstances, he has forfeited that potential argument, which we reserve for another day.

In our view, the April 15 dismissal of Wexford complied with the basic requirements of an "award" under NASD Rule 10330(e). The arbitration panel stated that oral arguments were heard on Wexford's "fully briefed motion," that the panel found "in favor of Respondent Wexford," and that it was dismissing Wexford from the proceeding. It is worth recalling that April 15 was the second time Wexford's motion to dismiss had been set for argument. When the panel chair dismissed Wexford from the arbitration proceeding for the first time on February 18, 2001, he issued a comprehensive and reasoned decision explaining why Olson could not show that Wexford had engaged in any of the alleged wrongdoing. Prior to hearing arguments for the second time, the panel indicated to Olson that the problems identified in the February 18 decision had not adequately been addressed, and it invited him to withdraw his opposition to Wexford's motion. Olson declined to do so and proceeded with oral argument. Under the circumstances, it is not surprising that the panel did not issue a second opinion to accompany its April 15 decision.

In determining the finality of an arbitration award, we consider whether "the award itself, in the sense of judgment, order, bottom line, is incomplete in the sense of

having left unresolved a portion of the parties' dispute." *IDS Life Ins.*, 266 F.3d at 651. There is nothing incomplete about the order issued on April 15. The order unambiguously states that Wexford is "hereby Dismissed" from the arbitration proceeding and leaves nothing further for the arbitration panel to adjudicate between Olson and Wexford. The arbitrators thought that they were through with the case, see *Smart v. Int'l Bhd. of Electric Workers, Local 702*, 315 F.3d 721, 725-26 (7th Cir. 2002), and that their award was final. *Paganis v. Blonstein*, 3 F.3d 1067, 1070-71 (7th Cir. 1993) (a dismissal must only make clear that plaintiffs are denied all relief; there are no other "magic words" required). Since the panel's handling of this matter complied with the general requirements of NASD Rule 10330(e), we conclude that the April 15 dismissal of Wexford was a final NASD award.

But, Olson argues, even if the April 15 award was sufficiently final to end the case, it had another flaw serious enough to affect the limitations period. NASD Rule 10330(a) requires all awards to be "signed by a majority of the arbitrators." Thus, according to Olson, the April 15 award could not have been a proper award under NASD rules because it was signed by the chair on behalf of the panel. While conceding that " 'superficial technicalities' should not control whether a decision in arbitration is final or not," Olson nonetheless urges us to find in his favor on this basis because he believes that the signature requirement is substantively important. In *Publicis Communication v. True North Communications, Inc.*, 206 F.3d 725 (7th Cir. 2000), the parties to an arbitration disagreed over the interpretation of a rule requiring the chairman's signature on procedural matters. Noting that either party's interpretation was plausible, we focused on the more relevant issue: that the finality of an arbitration agreement "should be judged by substance and effect, not by superficial technicalities." *Id.* at 730. Following that general approach, we are unper-

suaded that the arguable violation of the NASD rule here should have the drastic consequence of rendering the April 15 decision a nullity. As Wexford points out, the NASD rules do not prohibit the chair from signing an order on behalf of the panel. At the end of the day, this technicality offers no reason to disregard the unambiguous dismissal of Wexford on April 15.

Finally, we reject Olson's argument that the June 29 denial of his motion to amend started the three-month limitations clock for purposes of the FAA § 12. The FAA speaks in terms of "awards," and we have found no authority suggesting that a letter denying one party's motion to amend is properly characterized as an award. This letter did not comply with the requirements of an award under NASD Rule 10330. The best analogy is to a motion in federal court under Rule 60(b). The filing of a Rule 60(b) motion to reconsider outside the ten-day window after the judgment does not toll the time for filing an appeal, FED. R. APP. P. 4(a)(4)(A); *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 800 (7th Cir. 2000). We see no reason why the same reasoning should not apply in the arbitration context, particularly given the FAA's underlying policy of expeditious dispute resolution. "[T]he purpose of the short periods prescribed in the federal and state arbitration statutes for moving courts to vacate an award is to accord the arbitration award finality in a timely fashion." *Jefferson Trucking Co., Inc.*, 628 F.2d at 1027. This purpose would be severely undermined if the limitations period prescribed in the FAA § 12 were tolled every time a losing party filed the functional equivalent of a motion for reconsideration. See *Fradella*, 183 F.3d at 20.

A party who is uncertain about the finality or appealability of an arbitration award should err on the side of compliance with the FAA § 12, which is not onerous. The FAA authorizes a party to petition the district court if it believes that "a mutual, final, and definite award" was

not made. 9 U.S.C. § 10(a)(4). Given the fact that all of Olson's arguments on appeal challenge the finality of the panel's April 15 award, we find it puzzling that he did not move the district court to vacate pursuant to § 10(a)(4). If Olson had proceeded pursuant to § 10(a)(4) within three months after he learned that Wexford was dismissed from the proceeding, he could quickly have brought to the attention of the district court his concern that the award in favor of Wexford might not be final. See *Smart*, 315 F.3d at 723-24; *IDS Life Ins.*, 266 F.3d at 650-51; *cf. Employers Ins. of Wausau v. El Banco De Seguros Del Estado*, 357 F.3d 666, 670 (7th Cir.) (suggesting that no fixed deadline applies *only* when a party files a motion to remand for purposes of clarifying an ambiguous arbitration award), *cert. denied*, 125 S. Ct. 62 (2004).

Olson's decision to proceed under § 10(a)(3) did not alter the requirement that he had to act within three months after the award was "filed or delivered." 9 U.S.C. § 12. Since Olson has not alleged that the April 15 award was improperly filed or delivered, and the record would not support such an allegation, he had to file suit within three months of the April 15 award to preserve his arguments about the arbitrator's alleged misconduct. *Papapetropoulous v. Milwaukee Transport Servs., Inc.*, 795 F.2d 591, 596 n.8 (7th Cir. 1986) (although plaintiff's complaint clearly alleged a violation of the FAA § 10, "this complaint is barred as he failed to file it within the three month statute of limitation time period contained in 9 U.S.C. § 12"). Olson's failure to act within the limitations period bars his action.

### III

For these reasons, we AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*