In the

# United States Court of Appeals
## For the Seventh Circuit

―――――――――

No. 06-3094

DAVID M. WEBSTER,

*Plaintiff-Appellant,*

v.

A. T. KEARNEY, INCORPORATED and
ELECTRONIC DATA SYSTEMS CORPORATION,

*Defendants-Appellees.*

―――――――――

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 1811—**Harry D. Leinenweber**, *Judge.*

―――――――――

ARGUED JUNE 7, 2007—DECIDED NOVEMBER 2, 2007

―――――――――

Before BAUER, ROVNER, and SYKES, *Circuit Judges.*

ROVNER, *Circuit Judge.* In this appeal we decide whether David Webster filed his motion to vacate an arbitration award in federal district court one day too late. The district court concluded that the motion was untimely, having determined that the statute of limitations began to run when the award was placed in the mail and stopped when the defendants were served with notice of Webster's motion three months and one day later. Webster contends that both dates were improper benchmarks. We conclude that under § 12 of the Federal Arbitration Act ("FAA"), Webster's motion was

untimely. In reaching this decision, we have found it necessary to clarify our prior decisions concerning the critical dates for purposes of the FAA's three-month limitations period.

## I.

A.T. Kearney, Inc. hired Webster as General Counsel in 1994. The following year, Electronic Data Systems Corporation acquired A.T. Kearney. After working for the new entity for a number of years, Webster lost his job when A.T. Kearney's legal department was eliminated. He brought claims against the defendants (collectively "EDS") for age discrimination and breach of his 1995 Employment Agreement. That agreement contained a mandatory arbitration provision, under which the parties agreed to arbitrate employment disputes according to the procedures of the American Arbitration Association ("AAA"). Accordingly, Webster filed a demand for arbitration in October 2003, and, after nearly two years, a hearing was held. Ultimately the AAA-appointed arbitrator found for EDS.

The arbitrator issued the award on January 4, 2006. That same day, the award was placed in the mail and also distributed to both parties' counsel via e-mail. A cover letter dated January 4 accompanied both disseminations. Webster's attorney, Norman Lerum, first opened the e-mail on January 5, although he acknowledges that the message was "received" by his "office computer" on January 4. Unsatisfied with the arbitrator's decision, Webster sought to overturn the award on the ground that the arbitrator had exceeded his authority, *see* 9 U.S.C.

§ 10(a)(4). Toward that end, he filed a motion[1] to vacate the award in federal district court on April 3, 2006, and served EDS with notice of the motion on April 5. EDS responded by moving to dismiss Webster's action as untimely.

The FAA provides that when a party moves to vacate, confirm, or modify an arbitration award, notice "must be served upon the opposing party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. EDS argued that the award was "delivered" for purposes of the FAA when it was placed in the mail on January 4, or alternatively when it was e-mailed the same day. EDS further maintained that it was "served" when it received notice of the filing of the federal action on April 5—one day after the three-month anniversary of the award's delivery. The district court took the delivery date to be January 4, when the e-mail was sent and received (although not opened). The court held that the statute of limitations expired on April 4, exactly three months later, rendering Webster's federal action untimely.

## II.

We note at the outset that, although the parties agree that our review is *de novo*, they dispute whether this appeal is from the denial of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or a motion for

---

[1] As we will discuss further, the motion was erroneously styled as a "complaint" and the case was treated by both parties and the district court as a new civil litigation, including the filing and granting of a "motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6). This is contrary to § 6 of the FAA, which provides that actions to challenge or confirm arbitration awards "shall be made and heard in the manner provided by law for the making and hearing of motions."

summary judgment under Rule 56. They are both mistaken, and we are puzzled by the way the parties' attorneys—who purport to be experienced with litigation under the FAA—proceeded in the district court. Under the FAA, "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions." 9 U.S.C. § 6. This provision of the FAA, we have held, removes actions to confirm or vacate arbitration awards from the realm of civil cases governed by the Federal Rules of Civil Procedure. *See* Fed R. Civ. P. 1, 81(a)(3); *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1257-58 (7th Cir. 1992). In *Hughes*, the filer of a motion to vacate protested the district court's denial of the motion and the entry of judgment in favor of the opposing party on the ground that the district court had not afforded the movant the process required by Federal Rule of Civil Procedure 16, including scheduling conferences and briefing. We held that § 6 of the FAA "preempts the applicability of the Federal Rules" in favor of the rules governing motions practice. Similarly, other courts have concluded that actions under the FAA to challenge or confirm awards proceed outside the Federal Rules, except insofar as the FAA is silent. *See Productos Mercantiles e Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 46 (2d Cir. 1994); *O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 748 (11th Cir. 1988).

Accordingly, the procedures used in this case diverged from those required by the FAA. No "complaint" or "motion to dismiss" or any other filing conceived by the Federal Rules of Civil Procedure need have been filed. Webster, as the party challenging the award, should have filed a motion to vacate and "provid[ed] the Court with all matters that it desires the Court to consider in support" of that motion. *Hughes*, 975 F.2d at 1258 n.3. EDS, in turn, could have contested the motion by seeking confirmation

of the award, again submitting whatever supporting documentation was necessary for a decision. If necessary, and in keeping with its motions practice, the district court could have scheduled a hearing or other additional steps. We do not suggest that the procedural foibles amounted to reversible error; this was a case of mislabeling rather than mishandling. The district court did not rule on the merits of Webster's motion, and the parties had the opportunity to submit documentary evidence on the issue of timeliness, the only matter now before us. *See Productos Mercantiles e Industriales*, *S.A.,* 23 F.3d at 46 (explaining that district court properly decided motion based solely on papers submitted by parties). We simply note the procedural irregularities by way of considering whether the parties properly identify the standard of review as *de novo*. They are correct, but not because we are reviewing an appeal from a motion to dismiss or a motion for summary judgment, but because a district court's decision on a motion to vacate or confirm an arbitration award under the FAA is reviewed *de novo*. *Cytyc Corp. v. DEKA Prods. Ltd. P'ship,* 439 F.3d 27, 32 (1st Cir. 2006); *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006); *Sarofim v. Trust Co. of the W.*, 440 F.3d 213, 216 (5th Cir. 2006). We turn now to the issue of timeliness.

On appeal, Webster argues that his motion was timely for a number of reasons. We begin with the more straightforward issue of when the three-month statute of limitations ceases to run. Webster contends that the *filing* of a motion to vacate is the relevant benchmark because filing signals the commencement of a federal action. EDS contends that the phrase "service of notice" in § 12 of the FAA should be construed literally to mean that the limitations period stops only when notice is served.

The rule that Webster suggests has no grounding in the plain language of the relevant statute, and that is where

our inquiry begins and ends, absent some ambiguity. *See Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 954 (7th Cir. 2004); *O'Kane v. Apfel*, 224 F.3d 686, 688-89 (7th Cir 2000). We find nothing ambiguous about § 12's provision that the statute of limitations is tolled when notice of a motion to vacate is "served upon the opposing party or his attorney." Despite this plain language, Webster insists that the "clear intent of 9 U.S.C. § 12 was to toll the three month limitation with the commencement of an action to vacate the challenged arbitration award," *i.e.*, the filing of the motion. He maintains that § 12 of the FAA was superseded by Federal Rule of Civil Procedure 3, which provides: "A civil action is commenced by filing a complaint with the court." But our preceding analysis should make clear that the Federal Rules do not preempt the FAA, and that a "complaint" is not needed at all in an action to vacate or confirm an award. *See Hughes*, 975 F.2d at 1257-58. Indeed, the Federal Rules themselves provide that they apply to federal civil suits "with the exceptions stated in Rule 81," Fed. R. Civ. P. 1, and Rule 81(a)(3) provides that in proceedings under the FAA (title nine of the United States Code), "these rules apply only to the extent that matters of procedure are not provided for in those statutes." Webster's argument that the Federal Rules supercede FAA § 12 by implication therefore is unavailing. Accordingly, the statute of limitations did not terminate until Webster gave the defendants notice of his intent to challenge the arbitration award on April 5.

Before moving on, we wish to clarify some of our previous statements about the tolling date. The parties point out, correctly, that at least two of our past decisions could be read to provide some support for Webster's position that the statute of limitations stops upon the *filing* of a motion to vacate or otherwise alter an award. *See Olson v. Wexford Clearing Servs. Corp.*, 397 F.3d 488, 492 (7th Cir.

2005) ("'[H]e had to file suit within three months of the April 15 award to preserve his arguments about the arbitrator's alleged misconduct"); *Papapetropoulous v. Milwaukee Transp. Servs., Inc.,* 795 F.2d 591, 598 n.8 (7th Cir. 1986) (stating that motion was time-barred because plaintiff "failed to file it within the three month statute of limitation time period contained in 9 U.S.C. § 12"). But these cases do not affect our present analysis because in both cases the precise end date was of no import. In *Olson*, we decided when the challenged award was "final" and whether a motion for reconsideration tolls the statute of limitations. 397 F.3d at 492, 493. And in *Papapetropoulous*, an action under 42 U.S.C. § 1983, the plaintiff did not seek relief in federal court until ten months after the award, and may have lacked standing to challenge the award. 795 F.2d at 596 & 596 n.8. To the extent that our use of the term "filing" in those cases is misleading, we clarify now and for purposes of future cases that *service* of a motion to vacate is the act that stops the three-month statute of limitations. Unless and until Congress amends § 12 and makes filing the critical date, we will continue to enforce the plain language of the statute.

Next we must decide when the statute of limitations began to run. The candidates are January 4, when the award was placed in the mail, e-mailed by the AAA, and received by Lerum (Webster's counsel) at his "office computer"; January 5, when Webster first opened the e-mail from the AAA; and January 9, when Lerum received the arbitrator's award in the mail. Webster maintains that the period began to run when he received the mailing, or at the very earliest when he opened the e-mail attachment.

Under 9 U.S.C. § 12, the three-month period begins running when the arbitration award is "filed or delivered." Surprisingly, few decisions have directly addressed what it means for an award to be "delivered." Moreover, courts have imprecisely substituted a number of other terms for

"delivery" without explanation.[2] We need not dwell long on statutory interpretation or judicial construction of the term, however, because the parties in this case agreed to proceed under the rules of the AAA, and those rules supply the definition.

Under the terms of an addendum to Webster's Employment Agreement, the parties agreed to arbitration "pursuant to AAA procedures." Accordingly, the arbitration proceeded according to the September 2005 version of the AAA's *National Rules for the Resolution of Employment Disputes*.[3] Two rules are relevant here. First, Rule 33 provides that the parties are deemed to have consented to service by mail of all "papers, notices, or process" relating to the arbitration, including "the entry of judgment on an award made under these procedures." Second, Rule 34(g) provides in relevant part: "The parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail."

We conclude that the clear mutual consent to service by mail, coupled with the definition of "delivery" as placement in the mail, establish that, at least for purposes of this case, the award was "delivered" on January 4 when the AAA case manager placed the award in the mail. Webster's objections to this position are unconvincing. He contends that his consent to service by mail under Rule 33 extends only to service of papers "other than the arbitration award," but we find no support for this proposi-

---

[2] For instance, multiple courts, including this one, have implied (in *dicta*) that the parties have three months from when the award is "issued" or "entered" to file a motion. *See Olson*, 397 F.3d at 488; *Wallace v. Buttar,* 378 F.3d 182, 197 (2d. Cir. 2004); *Fradella v. Petricca*, 183 F.3d 17, 20 (1st Cir. 1999).

[3] The *Rules* have since been amended and the ones we discuss have since been renumbered.

tion in the language of the rule. And even if Webster is correct that Rule 34 is the only one that pertains to awards, that rule establishes that delivery of an award is "the placing of the award or a true copy thereof in the mail." Thus, the date the award was placed in the mail—January 4—controls.

We note for the sake of completeness that the only other federal appellate court to decide what "delivery" means for purposes of the FAA's statute of limitations came to a different conclusion. In *Sargent v. Paine Webber Jackson & Curtis, Inc.*, 882 F.2d 529 (D.C. Cir. 1989), the court held that the date of receipt, not of mailing, was the date of delivery. *Id.* at 531. The D.C. Circuit's decision was premised on its belief that interpreting "delivery" as "mailing" would "hopelessly twist[ ] the ordinary meaning of the word 'delivered.'"[4] *Id.* Although we agree that the interpretation is not intuitive, the AAA rules equate "legal delivery" with "placement in the mail," and given the parties' agreement that those rules govern their dispute, we see no reason to interpret "delivery" in a way that conflicts with Rule 34(g). After all, under the FAA the parties are free to agree to any governing rules, and the courts will enforce whatever system they choose. *See Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford*, 489 U.S. 468, 476 (1989) ("There is no federal policy favoring

[4] We would note that this case demonstrates that equating "delivery" with "receipt" does not solve everything; there can still be multiple definitions of "receipt" such as those proposed by Webster. Is the award "received" when an e-mail is sent and delivered or when it is read? Is "receipt" the arrival of a letter at the destination address, or the opening of the letter by the proper party? However, the D.C. Circuit helpfully noted in *Sargent* that the case was not one in which a potential distinction between receipt and delivery "could play a role." 882 F.3d at 531.

arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate."); *Security Ins. Co. of Hartford v. TIG Ins. Co.*, 360 F.3d 322, 325 (2d Cir. 2004). Because the D.C. Circuit's decision is factually distinguishable—that case is silent about the governing rules—we do not believe our decision today creates a conflict. Additionally, at least one other court has assumed that the date of receipt, not the date of mailing, is when an award is delivered. *See Pfannensteil v. Merrill Lynch, Pierce, Fenner, & Smith*, 477 F.3d 1155 (10th Cir. 2007). In *Pfannensteil*, the court assumed that the three-month period began to run when the plaintiff "received" the award (five days after it was issued). *Id.* at 1158. It is unclear what "receipt" entailed, but in any event the meaning of "delivery" was not before the court, and its opinion does not explain its use of "receipt" as a benchmark. Moreover, there is no indication that the parties had agreed to another definition of "delivery," as they did in the case before us. We therefore have little reservation holding that in this case the three-month period started on January 4, when the AAA representative placed the award in the mail.

Of course, the physical mail was not the only form of notice in this case. EDS argues, and the district court concluded, that January 4 is the date of delivery for the alternative reason that the award and cover letter were sent to both parties as e-mail attachments on that date. Webster's attorney acknowledges that his "office computer received [the award] by email" on that date, but insists that the relevant "delivery date"—if e-mail is ever proper notice, which he disputes—is the date on which he opened the e-mail, January 5. We are inclined to agree with the district court that electronic "delivery" occurred when the e-mail was sent on January 4. Under the AAA rules, placement in the mail signifies delivery of postal mail,

so we see no reason to apply a different standard to e-mail. Moreover, Webster's proffered interpretation—that delivery occurs when an e-mail is first *opened*—would allow a party to postpone the statute of limitations indefinitely simply by ignoring his correspondence. Notably, Webster does not argue that *postal* mail is "delivered" only when the recipient opens the envelope; instead he argued that January 9, the date he *received* the written award, was the operative date.

All this is academic, if, as Webster contends, e-mail transmission can never constitute proper delivery of an award unless the parties explicitly consented to this form of notification. For support, he turns to the AAA Rules, under which, as we have seen, the parties are deemed to have consented to service by mail. Although under Rule 33 the parties "may" consent to notice through electronic means, consent to such notice is not implied. We are skeptical of Webster's assertion that he never consented to e-mail transmission because the record reveals that a great deal of communication between the parties and the AAA was accomplished through e-mail. In particular, it appears that a number of scheduling orders were disseminated to the parties *only* through e-mail. Still, we are reluctant to hold, absent evidence of an express agreement between the parties, that his use of electronic communication for certain matters constituted consent to accept delivery of the award by e-mail. We will leave that decision for another case, because our conclusions with respect to the mailing of the written award foreclose Webster's argument that his motion was timely.

**III.**

Because the statute of limitations began to run when the award was placed in the mail on January 4, 2006, and

expired three months later on April 4, Webster's motion to vacate the arbitration award was untimely. Service of notice on EDS, on April 5, occurred one day too late, and denial of the motion to vacate was proper. Accordingly, the judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

                    _____

                    *Clerk of the United States Court of*
                      *Appeals for the Seventh Circuit*