NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 27, 2014[*]
Decided October 28, 2014

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 14-1705

|  |  |
|---|---|
| STANLEY J. MICAL and LUTGARDA C. MICAL, *Plaintiffs-Appellants*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 13 C 6508 |
| PHILIP J. GLICK, et al., *Defendants-Appellees*. | Charles P. Kocoras, *Judge*. |

**O R D E R**

Stanley and Lutgarda Mical opened a securities account with E*Trade Securities in January 2008 and began trading on margin, borrowing money from E*Trade to purchase additional securities. By July 1 their portfolio was highly leveraged, so E*Trade issued a margin call requiring that the Micals deposit $35,000 to shore up their

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2).

account. On July 7, the day the margin call was due, Stanley Mical spoke with Stuart Novoselsky, a customer service representative at E*Trade, about meeting the call. The Micals paid nothing after that conversation, and E*Trade liquidated the account.

Three years later the Micals initiated arbitration proceedings in accordance with their customer agreement, alleging that E*Trade had negligently liquidated their holdings. The Micals principally asserted that they had intended to meet the $35,000 margin call by the close of business on July 7 but did not because Novoselsky wrongly said during the phone conversation that the account was in negative equity and thus demanded that they meet the maintenance requirement, which at the time was around $111,000. The Micals could have paid $35,000 immediately but not $111,000, so according to their version of events, Novoselsky informed the margin department that they had no liquid assets available and E*Trade consequently liquidated the account. E*Trade countered that the July 7 phone conversation had concerned only the margin call, which Stanley said the Micals could not meet, and thus E*Trade was justified in liquidating the account.

The arbitration was conducted by three arbitrators from the Financial Industry Regulatory Authority (as specified in the customer agreement) over five sessions in June 2013. Audio recordings of the sessions were made in compliance with the Authority's rules. Afterward the arbitrators issued a decision rejecting the Micals' claim. The arbitrators denied the Micals' request for a reasoned decision, noting only that the recorded (and transcribed) July 7 phone conversation supported E*Trade's version.

The Micals then asked the district court to vacate or modify the arbitration award under the Federal Arbitration Act, *see* 9 U.S.C. §§ 10–11, naming as defendants E*Trade and the three arbitrators. The Micals contended that the arbitrators had committed misconduct by listening to the July 7 phone call only once, by receiving into evidence a transcript of that conversation commissioned by E*Trade but not the copy they annotated with proposed corrections and commentary, and by recessing the proceedings to duck their arguments about the phone conversation. The Micals further contended that the arbitrators were biased and had erroneously accepted E*Trade's purported assertions that their account had negative equity and zero collateral on July 7. The Micals' submissions consisted primarily of citations to self-transcribed excerpts from the arbitration hearing tapes, which they also proffered. E*Trade in turn moved to confirm the arbitration award. *See id.* § 9.

The district court declined to consider the audio recordings of the arbitration proceedings and confirmed the arbitrators' decision. The district court also concluded that the arbitrators themselves were immune from suit. On appeal the Micals do not contest the court's immunity analysis, and so we say no more about the arbitrators as defendants. (The court, following E*Trade's mistaken lead, analyzed the Micals' filing under Federal Rule of Civil Procedure 12(b)(6), which does not apply to the Federal Arbitration Act. *See* 9 U.S.C. § 6; FED. R. CIV. P. 81(a)(6)(B); *Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 570–71 (7th Cir. 2007); *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1257–58 (7th Cir. 1992). The court's procedural miscue was inconsequential since our review is de novo. *See Webster*, 507 F.3d at 571.)

On appeal the Micals argue that the district court erred by not listening to the audio recordings of the arbitration proceedings. The Micals principally rely on 9 U.S.C. § 10(a)(3), which permits a court to vacate an arbitration award "where the arbitrators were guilty of misconduct … in refusing to hear evidence pertinent and material to the controversy."

Although in some instances a district court may need to review relevant portions of an arbitration record to evaluate an allegation of arbitrator misconduct or bias, *see Harter v. Iowa Grain Co.*, 220 F.3d 544, 557 (7th Cir. 2000); *Health Servs. Mgmt.*, 975 F.2d at 1258–59, that step wasn't necessary to evaluate the Micals' claim of misconduct. An arbitrator's refusal to receive relevant evidence, standing alone, does not warrant vacating an arbitration award; rather, the arbitrators' failure to consider pertinent evidence must have deprived the Micals of a fundamentally fair hearing. *See Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 280 (7th Cir. 1992); *Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 481 F.3d 813, 816–17 (D.C. Cir. 2007); *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 531 (4th Cir. 2007). This standard typically is met only when an arbitrator wrongly excludes the sole evidence on a pivotal issue. *See Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2nd Cir. 1997) (vacating award where arbitrators terminated proceedings without hearing from key participant to contract negotiations, relying on mistaken belief that documents created after contract was executed would speak to missing witness's allegations of fraudulent inducement); *Gulf Coast Indus. Workers Union v. Exxon Co., USA*, 70 F.3d 847, 848–50 (5th Cir. 1995) (vacating arbitrator's ruling that employer lacked basis to fire employee for refusing drug test since arbitrator had misled employer into believing that further evidence of testing of substance found in employee's car was unnecessary in light of undisputed testimony that substance had tested positive for marijuana); *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union de Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir.

1985) (vacating award where arbitrator gave no weight to transcript of criminal proceedings concerning conduct that led to employee's discharge, effectively denying employer opportunity to present any evidence because live testimony was unavailable).

Here, even assuming the accuracy of the transcribed excerpts of the arbitration proceedings that appear in the Micals' submissions, the unfair-hearing standard has not been met. The Micals' primary complaints are that the arbitrators rejected their request to replay the recording of the July 7 phone conversation, twice recessed the proceedings in the midst of discussions about the content of the phone call, and accepted E*Trade's transcript of the conversation but refused to consider their annotated version. Yet the Micals' scattered excerpts of the arbitration show that the arbitrators listened to the recorded telephone call, read a transcript provided by E*Trade, heard the testimony from both Stanley Mical and Novoselsky, and engaged in a lengthy inquiry regarding whether the conversation was about the $111,000 maintenance requirement or the $35,000 margin call. Thus, the arbitrators' actions suggest only an effort to control the quantity and type of evidence before them, not a refusal to hear pertinent evidence.

The Micals also contend that the district court should have engaged in independent fact-finding. In their view the district judge should have decided if Novoselsky had demanded the $111,000 maintenance figure rather than the $35,000 margin call. The judge also should have determined, the Micals say, whether they had funds available to meet the margin call and the value of their account at the beginning of July 2008. But the Federal Arbitration Act does not allow courts to make findings of fact or even to *review* an arbitrator's factual findings. *See Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1025–26 (7th Cir. 2013); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 269 (7th Cir. 2006); *Flexible Mfg. Sys. Pty. Ltd. v. Super Prods. Corp.*, 86 F.3d 96, 99–100 (7th Cir. 1996).

The Micals' remaining arguments also lack merit. To justify vacating an award based on arbitrator bias, a party must identify "evident partiality," 9 U.S.C. § 10(a)(2), which is "direct, definite and capable of demonstration rather than remote, uncertain, or speculative," *Harter*, 220 F.3d at 553 (internal quotation marks and citation omitted). The Micals cite no examples, however; instead they accuse the arbitrators of bias simply because the panel made factual findings contrary to their own positions and ultimately ruled against them. Nor have the Micals identified an "evident material mistake" appearing "on the face of the arbitration award" that could justify modifying it. *See* 9 U.S.C. § 11(a); *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir. 1998).

Finally, because the Micals established no basis for vacating or modifying the arbitration award, the district court was correct to confirm it. *See* 9 U.S.C. § 9; *IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645, 650 (7th Cir. 2001).

AFFIRMED.